## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 31 2017, 9:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian Carpenter, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 31, 2017 <br><br> Court of Appeals Cause No. 28A01-1706-CR-1381 <br><br> Appeal from the Greene Superior Court <br><br> The Honorable Dena A. Martin, Judge <br><br> Trial Court Cause No. 28D01-1612-F6-224 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Brian Carpenter (Carpenter), appeals his two-year sentence after he pled guilty to criminal confinement, a Level 6 felony, Ind. Code § 35-42-3-3(a).

[2] We affirm.

# ISSUE

[3] Carpenter presents a single issue on appeal, which we restate as: Whether Carpenter's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

[4] On November 10, 2016, Carpenter battered his wife, Connie Carpenter (Connie), in a parking lot. Carpenter was arrested and the next day, under Cause Number 28D01-1611-CM-000448 (CM-48), the State filed an Information, charging Carpenter with domestic battery, a Class A misdemeanor. On December 14, 2016, Carpenter was released from the Green County Jail, and a no-contact order was issued prohibiting Carpenter from having any contact with Connie. That same evening, Carpenter went to Connie's apartment located in Green County, Indiana. Carpenter entered Connie's residence without her consent and informed her that the no-contact order had been dropped. Carpenter then held Connie down, and would not allow her to leave her apartment. Carpenter also pushed Connie onto a bed, and raised his fist as if he was going to hit her. He additionally pulled Connie's

hair and forcefully grabbed her left arm, leaving a bruise on the bicep area. At approximately 12:30 a.m. on December 15, 2016, Officer James Harrington (Officer Harrington) of the Worthington Police Department was dispatched to Connie's apartment. By that time, Connie had escaped, but Carpenter was still inside the apartment. When Officer Harrington entered Connie's apartment, he found Carpenter lying on a bed. Officer Harrington was forced to use his taser on Carpenter because Carpenter refused to be handcuffed. Because Carpenter refused to walk out of the residence, Officer Harrington had to drag him out. During the arrest, Officer Harrington noticed that Carpenter had a strong odor of alcohol emanating from his mouth. In addition, he noticed that Carpenter had glassy and bloodshot eyes, and had urinated on himself. While outside, Officer Harrington searched Carpenter's pants pockets and found a Ziploc bag containing several legend drug pills.

[5] On December 16, 2016, under Cause Number 28D01-1612-F6-000224 (F6-224) the State filed an Information, charging Carpenter with Count I, residential entry, a Level 6 felony, I.C.§ 35-43-2-1.5; Count II, criminal confinement, a Level 6 felony, I.C.§ 35-42-3-3(a); Count III, invasion of privacy, a Class A misdemeanor, I.C.§ 35-46-15.1(1); Count IV, domestic battery, a Class A misdemeanor, I.C.§ 35-42-2-1.3(a)(1); Count V, unlawful possession or use of legend drug, a Level 6 felony, I.C. § 16-42-19-13; and Count VI, refusal to aid an officer, a Class B misdemeanor, I.C. § 35-44-1-3-3. On April 25, 2017, pursuant to a plea agreement under Cause Number F6-224, Carpenter agreed to plead guilty to Level 6 felony criminal confinement, and the State agreed to

dismiss all other Counts. On May 25, 2017, after a factual basis was established, the trial court accepted Carpenter's plea. That same day, the trial court conducted a sentencing hearing. At the close of the evidence, the trial court sentenced Carpenter to two years, with 161 days of credit time served, in the Green County Jail.

[6]     Carpenter now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[7]     Carpenter claims that his two-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The "nature of offense" compares the defendant's actions with the required showing to sustain a conviction under the charged offense, while the "character of the offender" permits a broader consideration of the defendant's character. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008); *Douglas v. State*, 878 N.E.2d 873, 881 (Ind. Ct. App. 2007). An appellant bears the burden of showing that both prongs of the inquiry favor a revision of his sentence. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case.

*Cardwell*, 895 N.E.2d at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.*

[8] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Level 6 felony criminal confinement, Carpenter faced a sentencing range of six months to two and one-half years, with the advisory sentence being one year. I.C. § 35-50-2-7(b). Here, the trial court imposed a two-year sentence.

[9] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Carpenter argues that his offense against his wife is not one of the most egregious. Carpenter additionally downplays the seriousness of his offense by stating that Connie did not seek "medical treatment after the accident, although the probable cause affidavit indicates police photographed a bruise on her arm." (Appellant's Br. p. 10). The circumstances of the offense are: Within a day after Carpenter was released from the Green County Jail for the battery offense against Connie, he went to Connie's apartment, which was a violation of his no-contact order. While heavily intoxicated, Carpenter entered Connie's residence without her consent, and once inside, he pulled her hair, forcefully grabbed her left arm, and pushed her down on a bed which prevented her from leaving. Furthermore, after Connie was able to escape, Carpenter remained inside Connie's residence until

the police arrived and forced him out. We are not persuaded that the nature of Carpenter's offense warrants a reduction in the imposed sentence.

[10] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of a criminal history in assessing a defendant's character varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* While a record of arrests may not be used as evidence of criminal history, it can be "relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). Carpenter's criminal convictions and record of arrests includes public intoxication, illegal possession of alcoholic beverage, operating a vehicle while intoxicated (multiple), battery resulting in bodily injury (multiple), obstruction of justice, criminal trespass (multiple), and domestic battery. We note that almost all of Carpenter's past offenses, with the exception of a battery conviction, are alcohol related. While committing the instant offense, Carpenter became intoxicated, then went to Connie's apartment, and proceeded to confine her and batter her. Carpenter did this despite there being a no-contact order between him and Connie.

[11] At his sentencing hearing, Carpenter offered the trial court, and he again offers us, information regarding his failing health. Specifically, Carpenter stated that (1) in the past year, he had suffered a heart attack; (2) shortly before he was arrested for the instant offense, he had a "backside" surgery "which did not go well"; (3) he had lost "10 or 12 pounds" of weight before his guilty plea and

sentencing hearing; and (4) the doctor at the Green County Jail would not offer him adequate medical treatment for his health problems. (Appellant's Br. p. 11). We are unpersuaded by Carpenter's request to have his sentence reduced because of his failing health. There is no evidence in the record that supports a notion that his heath issues prevented him from leading a law-abiding life. Finally, Carpenter argues that he took responsibility when he pleaded guilty to the offense of criminal confinement. However, Carpenter received a substantial benefit by pleading guilty. In exchange for Carpenter's plea of guilty, the State dismissed two other felony charges and three misdemeanor charges. Carpenter's criminal history and prior stints in jail have not deterred him from breaking the law. For all of the above reasons, Carpenter has failed to meet his burden in persuading us that his sentence is inappropriate in light of his character.

## CONCLUSION

In sum, we conclude that Carpenter's sentence is appropriate in light of the nature of the offense and his character.

Affirmed.

Robb, J. and Pyle, J. concur