## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 12 2018, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Vanderpool
Vanderpool Law Firm, PC
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kristina L. Brown, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 12, 2018 <br><br> Court of Appeals Case No. <br> 85A04-1708-CR-1872 <br><br> Appeal from the <br> Wabash Circuit Court <br><br> The Honorable <br> Robert R. McCallen III, Judge <br><br> Trial Court Cause No. <br> 85C01-1511-F4-1024 |

**Kirsch, Judge.**

[1] Following her convictions on two counts of dealing in cocaine, each as a Level 4 felony,[1] and the trial court's imposition of an aggregate six-year executed sentence, Kristina Brown ("Brown") appeals, raising the following restated issues for our review:

> I. Whether the trial court abused its discretion when it denied her motion for separate trials for each of her counts; and

> II. Whether her sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] D.J. had a history of criminal offenses and worked as a confidential informant with the Wabash County Drug Task Force ("DTF"). On July 31, 2015, he contacted the DTF, telling the officers that he had arranged a drug buy for crack cocaine from a person identified as J.G. After finding that J.G. was not at home, D.J. and his DTF contact decided to go to the home of J.G.'s supplier, Brown.

[4] Upon their arrival, Brown was sitting outside on the porch, and D.J. decided to attempt a purchase from her directly. After a brief conversation, D.J. believed

---

[1] *See* Ind. Code § 35-48-4-1(c)(2).

that he had talked Brown into the sale. Knowing that she would not make a sale with his friend there, D.J. took the contact home and returned to Brown's home. She got into D.J.'s car, and they drove around the block. Brown gave D.J. a small package wrapped in thin paper, and D.J. gave her $100.00. He then dropped her off at her house and went to another location for a post-buy search and to give the officers of the DTF the package he had received. The package was found to contain cocaine of less than one gram.

[5] About two weeks after the first transaction, D.J. again called Brown. He asked her whether she had more cocaine, and she replied that she did. D.J. then called the DTF, who arranged for the pre-buy search. Once again, after the search, D.J. went to Brown's home. On this occasion, two of Brown's children were outside. When D.J. drove up, Brown came directly to his car, removed a small package from her bra and gave the package to D.J. D.J. gave Brown $100.00 and left. He then met with the officers of the DTF and gave them the package he had received from Brown. The package was found to contain cocaine of less than one gram.

[6] Brown was charged with two counts of Level 4 felony dealing in cocaine. Prior to trial, Brown filed a Motion to Separate the Trials of the two counts, contending that the offenses were not part of the same scheme or plan and that separate trials were necessary for a fair trial on the charges. At the hearing on her motion, Brown argued that the charges were joined simply because they were of the same or similar character. The State responded that the charges were not joined for trial due to their similarity, but because they were a part of a

larger effort to show that the Brown dealt drugs, and were, therefore, connected. The trial court denied Brown's Motion for Separate Trials.

[7] Brown was convicted of two counts of Level 4 felony dealing in cocaine, and a pre-sentence investigation report was submitted to the trial court. It revealed that Brown had four prior A misdemeanor convictions as an adult. One of those was for possession of marijuana, and the rest were for driving while suspended. In addition, while the case was pending, she was also convicted of a Class B misdemeanor offense, failing to stop after an accident.

[8] At sentencing, the trial court found that the aggravating circumstances outweighed any mitigating circumstances. On Count I, it ordered that Brown be incarcerated for eight years, with two years suspended. On Count II, the trial court ordered that Brown be incarcerated for six years, with no time suspended. The sentences were ordered to be served concurrently for an aggregate six-year executed sentence. Brown now appeals.

## Discussion and Decision

## I. Denial of Motion for Separate Trials

[9] Indiana Code section 35-34-1-9(a) provides that two or more offenses, stated in separate counts, may be joined in the same indictment or information when the offenses "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." However, Indiana Code section 35-34-1-11(a) "provides defendants with the right to

severance where 'two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character. . . .'" *Craig v. State,* 730 N.E.2d 1262, 1265 (Ind. 2000).

[10] "As the statute explicitly states, severance is required as a matter of right under this provision only if the sole ground for joining is that the offenses are of the same or similar character." *Id.* (citing *Ben-Yisrayl v. State,* 690 N.E.2d 1141, 1145 (Ind. 1997), *cert. denied,* 525 U.S. 1108 (1999)). "Offenses may be sufficiently 'connected together' to justify joinder under subsection 9(a)(2) 'if the State can establish that a common *modus operandi* linked the crimes and that the same motive induced that criminal behavior.'" *Id.* (emphasis in original) (citations omitted). "Because the trial court has no discretion when severing charges that were joined solely on the ground that they were of the same or similar character, we review the trial court's decision employing a de novo standard." *Booker v. State,* 790 N.E.2d 491, 494 (Ind. Ct. App. 2003).

[11] Here, the two charges were not joined solely because they were of the same character. To the contrary, the evidence presented demonstrated striking similarities beyond the mere "same or similar character" of Brown's offenses. First, the two offenses were close in time occurring two weeks apart. Second, on both occasions, D.J. contacted Brown at the same location, namely, her residence. Third, both offenses involved the sale of the same drug (crack cocaine), the same amount (less than one gram), and the same price (one hundred dollars ($100.00)). Fourth, on both occasions, the illegal drugs were

on Brown's person or in close proximity. The trial court did not abuse its discretion in denying Brown's motion for separate trials.

## II. Sentencing

[12] Brown argues that her eight-year aggregate sentence is inappropriate in light of the nature of the offense and her character. Pursuant to Indiana Appellate Rule 7(B), this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, not to achieve a perceived correct result in each case. *Brown v. State*, 52 N.E.3d 945, 954 (Ind. Ct. App. 2016) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)), *trans. denied*. We independently examine the nature of a defendant's offenses and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. The defendant bears the burden of persuading us that his sentence is inappropriate. *Brown*, 52 N.E.3d at 954.

[13] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed."

*Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). Here, Brown was convicted of two counts of dealing in cocaine as Level 4 felonies. A Level 4 felony is subject to a sentence between two and twelve years, with six years being the advisory. I.C. § 35-50-2-5.5. Brown received a sentence of eight years, with two years suspended to probation, for one count and six years with no time suspended for the other count. Her sentences were ordered to be served concurrently for an aggregate executed sentence of six years. Therefore, she received an executed term of the advisory sentence for one of her offenses and the opportunity to be incarcerated for no more than the advisory if she proves herself capable of complying with the terms of probation.

[14] The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Brown's sentence is not inappropriate in light of her crimes. In this case, she sold crack cocaine on two occasions, approximately two weeks apart. Both times, the deals began at her home while her children were present. One of the sales occurred in a community park where children were likely to be present. D.J. came to Brown's house because he believed that she was the cocaine supplier to the person from whom he had originally arranged to buy. Finally, Brown had the drugs in her possession and readily available for sale. Brown fails to show that the nature of her crimes warrant a reduction in her sentence.

[15] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. Brown also fails to prove that her

sentence is inappropriate as to her character. She has not accepted responsibility for her actions in this case and, to the contrary, has attempted to divert blame onto others for her own actions. She has also exposed her young children to the dangers of the drugs that she was selling from their home and in their presence. Brown has not shown the traits or character that warrant a revision of her sentence. To the contrary, Brown has a persistent history of criminal and delinquent conduct that has been unaffected by numerous opportunities for reform. Since 2002, Brown has been convicted or adjudicated delinquent in thirteen separate cases. As a juvenile, she was adjudicated delinquent for resisting law enforcement twice, possession of alcohol, disorderly conduct, incorrigibility, and being a runaway. She received formal and informal probation, intensive supervision program, and placement at the Indiana Girl's School. As an adult, she has been convicted of possession of marijuana, driving while license suspended three times, and failure to stop after an accident. She was also on probation at the time she committed the crimes in this case, and she committed another offense while on bond awaiting trial. We conclude that Brown's sentence is not inappropriate based on the nature of her offenses and her character.

[16] Affirmed.

[17] Bailey, J., and Pyle, J., concur.